## WILLIAM JOHNSON

### v.

## THE PEOPLE OF THE STATE OF ILLINOIS.

*Criminal Law—Criminal Code, Sec. 261—Labor on Sunday.*

1. In view of Sec. 261 of the Criminal Code, labor on Sunday is not of itself punishable, nor is it prohibited.

2. The offense that is punishable is the disturbance of the peace and good order of society; and in order to convict, such disturbance must be proven beyond a reasonable doubt.

3. The jury should not be told by the court in a given case that "it was to be presumed that it would disturb others for a man to go out on Sunday with a reaper and go to cutting grain."

4. A person can not be punished for laboring on Sunday when the same was a work of necessity, and it is more a question of fact than of law whether the labor done in a particular case is to be deemed of necessity or not; an absolute and physical necessity is not meant or required. Work to prevent a great waste of property is within the exception of such statutes.

5. The necessity for the work to be done must be real and urgent, and must not have been the result of unreasonable negligence or indolence on the part of the person doing the labor.

6. The words "great waste of property" does not necessarily mean property of great value. The circumstances and financial condition of the owner, and the value to him, and his need of the property, are to be considered in determining the true application and meaning of the phrase.

7. No action for damages lies upon the breach of an agreement founded in fatherly affection, and made by a father with his son, there being no legal contract between them.

8. This court holds that the labor in the case presented, the running of a reaping machine in a field of oats, was a work of necessity and proper.

[Opinion filed December 19, 1891.]

In error to the Circuit Court of Vermilion County; the Hon. J. F. Hughes, Judge, presiding.

Mr. G. W. Salmans, for plaintiff in error.

Messrs. H. P. Blackburn, State's Attorney, and G. F. Rearick, for defendants in error.

Boggs, J. Plaintiff in error, upon an indictment charging him with having violated the 26th section of the Criminal Code by laboring on Sunday, was on trial before the court and a jury, adjudged guilty, and by the court sentenced to pay a fine of $25, being the extreme punishment provided for in such cases.

He is a farmer having forty acres of land for which he holds a bond for a deed.

In the spring of 1890, he sowed some twenty-five acres in

oats, and not owning a reaper, arranged with his father to harvest the crop for him. On Monday of the last week in July he applied to his father to do the work, but the father being very busy in the cultivation of his corn, would not consent to come until Friday morning. The crop could be harvested in less than two days. On Friday morning the father and a brother came with a binder and began the work but soon after found that the sickle bar of the machine was bent. In endeavoring to straighten it the bar was broken so that it had to be taken for repair to Rossville, six miles away. This delayed the work until late Friday evening, and but a few rounds were cut that day. On Saturday the binder was run constantly, but at the close of that day eight acres remained to be harvested. The oats were very ripe, the straw was falling, and the grain shattering out badly. The father of plaintiff in error had a large crop of oats in like damaging condition and insisted on taking the machine into his own grain on Monday morning. Four days would be (and were) required to complete the harvest of the father, and the oats of plaintiff in error would, by that time, as the testimony shows, have been practically entirely lost. All other machines in the neighborhood were in use and plaintiff determined to keep his father's machine and save his oats on Sunday, which he did. He stopped the machine at eleven o'clock in the forenoon and did not start it again until two o'clock.

His field of oats was about forty rods from, but in plain view of a public road leading to a church about a mile distant. Four witnesses testified for the prosecution, but one of whom was at church, and his statement is, that he did not hear the machine at church, and if any one there heard it, he did not know it. This witness went to the church through the farms and heard the machine while passing near it. Another witness lived a mile away and heard the machine—could hear it plainly when the wind was fair. The two witnesses remaining were George Hallowell and his son-in-law, George Snelly, the latter of whom, with his family, while on the way to visit his father-in-law, passed along the road leading to the church, and saw plaintiff in error running the machine. No one else passed that road on that day so far as the evidence shows.

George Hallowell heard the machine in the forenoon, and he and Snelly testified that the noise could be heard for a mile, and Hallowell testifies that in the afternoon he took his son-in-law and went over into the corn field and watched and saw the plaintiff in error doing the work, but kept hid in the corn from him.   Hallowell says he has not been friendly with nor spoken to Johnson for over ten years.   Hallowell stated that the machine made considerable noise, and at that point was asked the question, " Do you think the noise was of a nature that would disturb persons in the neighborhood ?"   Counsel for Johnson objected and the court said :

"I think it would be presumed that it would disturb others for a man to go out on Sunday, with a reaper, and go to cutting grain."

There is no evidence that any one was annoyed or disturbed by the work, unless that is to be deemed sufficiently proven by the fact that the four witnesses heard the noise made by the operation of the reaper.

Sec. 261 of the Criminal Code is as follows:   "Whoever disturbs the peace and good order of society by labor (works of necessity and charity excepted), or by any amusement or diversion on Sunday, shall be fined not exceeding $25."   *   *
Sec. 317, Chap. 38, Starr & C. Ill. Stats.

Labor on Sunday is not of itself punishable under this statute, nor can it be said that the statute prohibits labor on Sunday.   The offense that is punishable is the disturbance of the peace and good order of society.   The harvesting of the oats by Johnson, on Sunday, was not a violation of law, unless in doing the work the peace and good order of society was disturbed; which must, as a question of fact, be proven beyond a reasonable doubt by the evidence, in order to warrant a conviction.   Proof of the noise made by the reaper was proper as a circumstance tending to show the "peace and good order of society" was disturbed, but it is not true, as the jury was told by the court, that "it was to be presumed that it would disturb others for a man to go out on Sunday with a reaper and go to cutting grain."   The law raised no such presumption, and it was error to advise the jury that it did.   The proof of a disturbance of the "peace and good order of

society" was but slight, and it may well be a matter of grave doubt whether the jury regarded it proven by the testimony, or presumed by the law to be true, from the mere fact that the labor was done. For that reason the conviction can not be sustained. Nor can the conviction be sustained, if, under all the circumstances, the labor done was in the meaning of the law, a work of necessity. The word *necessity*, as used in this statute, is perhaps not susceptible of an accurate and entirely comprehensive definition. It has been well said that the attempts of the writers of text books and of the courts to frame a definition has often been productive only of confusion and uncertainty. Each case must be decided according to the circumstances, and it is, therefore, more a question of fact than of law whether the labor done in a particular case is to be deemed of necessity or not.

All authorities agree that an absolute and physical necessity is not meant or required. Work, to prevent a great waste of property, has always been held to be within the exception of such statutes. Cases supposed to announce a contrary doctrine, such as Commonwealth v. Sampson, 97 Mass. 407, where it is held that gathering sea-weed on a secluded beach on Sunday is unlawful, though the seaweed be in danger of being washed away by the coming tide, and the case where the labor was that of capturing a whale that became stranded on Sunday, and other like cases, are not, it seems to us, at all at variance with this general doctrine. In these latter cases the labor was not so much for the purpose of saving property already acquired, as it was for gaining and securing additional property, and it is to be further remarked that the statutes governing these decisions, unlike the statutes of our State, forbid labor on Sunday, and provide for punishment if labor be done without regard to whether the "public peace and good order" is disturbed or not. The necessity for the work to be done must be real and urgent, and must not have been the result of unreasonable negligence or indolence on the part of the person doing the labor. It must not be understood that by the words "great waste of property" is necessarily meant property of great value.

Johnson v. The People.

A disturbance of the peace and good order of society would not be justified if the labor done was to save property of insignificant worth, yet the man of small means must be allowed to save his property from waste, though its value might not be deemed great by men of wealth. The circumstances and financial condition of the owner, and the value to him, and his need of the property, are to be considered in determining the true application and meaning of the phrase, "great waste of property," otherwise we would establish a principle of law beneficial only to wealthy persons.

In this case the plaintiff in error, a farmer of little means, living on a small tract of land for which he held a bond which entitled him to a deed if he could succeed in paying for it, after having diligently and in good faith endeavored to save his grain, by reason of circumstances beyond his control and which could not have reasonably been anticipated, finds himself on Saturday night in real danger of suffering a loss of near one-third of his crop. Its value is considerable to him. He can save it by running the reaper on Sunday; he did so. We think that the labor done was a work of necessity within the meaning of our statute.

Counsel for the people suggest that defendant had contracted with his father to harvest his crop and that the father not having begun the work early enough and being negligent in failing to have his reaper in good repair, was liable to the son for any loss in the crop, and that the plaintiff in error should have refrained from working on Sunday and recovered by suit against the father, his damages. This is fully answered by the fact that it is not claimed that the father was under any legal contract to cut the grain, but upon the contrary, that he was moved to do so from sentiments of fatherly affection. In such case no action for damages would lie. If a son, confronted with a situation which required him to save his property by working on Sunday, or to sit idly down and let it waste and sue his father for its value, should elect to do the work, save his property and avoid a suit with his father, would not this course meet with the approval of all right thinking persons?

If we were indulging in presumptions, it would be fair to presume that the peace and good order of the society in the community whence this cause originated would be more injuriously affected and disturbed and its good people more greatly annoyed and displeased by the embroiling of a father and son in a law suit, than it was proven to have been disturbed by the noise of the machine on the Sunday in question.

For the reasons given the judgment is reversed and the cause remanded.